1

2

3

4

5              UNITED STATES DISTRICT COURT

6                EASTERN DISTRICT OF CALIFORNIA

7

8    ROBERT F. SCHUH,                    )    1:06-cv-01896-LJO-TAG HC
                                         )
9                    Petitioner,         )    ORDER GRANTING PETITIONER'S
                                         )    MOTION TO AMEND PETITION (Doc. 7)
10        v.                             )
                                         )    FINDINGS AND RECOMMENDATIONS TO
11   DENNIS SMITH, Warden,               )    GRANT RESPONDENT'S MOTION TO
                                         )    DISMISS PETITION FOR WRIT OF
12                   Respondent.         )    HABEAS CORPUS FOR LACK OF
     _____ )    RIPENESS (Doc. 8)
13
                                              ORDER DIRECTING OBJECTIONS TO BE
14                                            FILED WITHIN TWENTY DAYS

15

16           Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus  pursuant

17   to 28 U.S.C. § 2241.

18                      **FACTUAL AND PROCEDURAL HISTORY**

19           The instant petition was filed on December 29, 2006.  (Doc. 1).   The petition contends

20   Petitioner pleaded guilty and was convicted of violating 21 U.S.C. § 856(a)(1) (maintaining a drug

21   house), and sentenced to a prison term of one hundred fifty-one months.  (Doc. 1, p. 4).  The petition

22   also asserts that Petitioner is now in the custody of the Bureau of Prisons ("BOP"), and that he is

23   presently assigned to a prison camp without bars or fences, a fact that, in Petitioner's view, is

24   evidence that he poses no flight risk or danger to the community and that he is a person of "honesty

25   and integrity."  (Id.).  Petitioner indicates that he is fifty-six years old and destitute, and immediate

26   placement in a Residential Re-entry Center ("RRC")  would permit him to "engage in full-time

27   employment."  (Id. at p. 5).

28

1  Petitioner notes that various federal courts, including this Court, have concluded that the

2  2002 and 2005 BOP regulations, by which the BOP has arbitrarily designated a maximum placement

3  time in RRC's equal to 10% of the prisoner's sentence, are illegal.  (Doc. 1, pp. 5-6).  Petitioner

4  contends that, under 18 U.S.C. § 3621(b),  the BOP "has a duty to consider the enumerated factors

5  set forth in the consideration of each individual prisoner on a case by case basis to determine the

6  appropriate place of imprisonment," and, implicitly, Petitioner contends that the BOP has failed to

7  do so in his case.  (Id. at p. 5).   Petitioner seeks an immediate placement in an RRC. (Id. at p. 6).

8  On April 26, 2007, before any responsive pleading had been filed, Petitioner filed a document

9  entitled "Motion Pursuant to Rule (15) Amended and Supplemental Pleadings Federal Rules of Civil

10 Procedure."  (Doc. 7).  In that document, Petitioner clarifies that the claims raised in his petition do

11 not challenge his eligibility for RRC placement, but rather seek an "immediate re-designation" to a

12 RRC because he satisfies all of the criteria of § 3621(b).  (Doc. 7, p. 2).

13 On May 16, 2007, Respondent filed the instant motion to dismiss, alleging that the petition is

14 premature because the BOP is not legally required to evaluate Petitioner for placement in an RRC

15 until eleven to thirteen months before his release date.  (Doc. 8, p. 2).  Respondent has submitted a

16 copy of "Program Statement 7310.04, Community Correction Center (CCC) Utilization and Transfer

17 Procedure, (12-16-1998)." ("Program Statement").  (Doc. 8-3).  The Program Statement sets forth

18 procedures for placement of prisoners in RRC's by the BOP.  (Id.).  That document also provides

19 that, "[n]ormally 11 to 13 months before each inmate's probable release date, the unit team shall

20 decide whether to refer an inmate to a Community Corrections program."  (Id. at ¶ 12.).

21 Respondent contends that Petitioner's release date is not until July 6, 2011, presently forty-

22 five months from now.  (Doc. 8, p. 2).  Respondent observes that, while challenging the 2002 and

23 2005 BOP regulations and arguing that the BOP has illegally failed to assign his to an RRC pursuant

24 to 18 U.S.C. § 3621(b), the petition does not challenge the Program Statement as illegal.  (Id. at p. 2).

25 Because the program statement does not require the BOP to make an assessment in Petitioner's case

26 for almost three more years, in Respondent's view, the petition is not ripe and should be dismissed.

27 (Id. at p. 4).

28 ///

1   On May 25, 2007, Petitioner filed a response to the motion to dismiss, contending that he did

2   not challenge the Program Statement in his petition because he was unaware of it.  (Doc. 9, p. 2).

3   Petitioner also contends that use of the Program Statement is an effort to circumvent the holdings of

4   courts that have found the BOP's regulations unlawful and that the Program Statement uses "the

5   same time limitations, time restraints, and unlawful procedures that this Court and numerous Circuit

6   Courts have deemed unlawful."  (Id.).

7   **JURISDICTION**

8   Writ of habeas corpus relief extends to a person in custody under the authority of the United

9   States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or

10   constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C.

11   § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must

12   bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g.,  Capaldi v. Pontesso,

13   135 F.3d 1122, 1123 (6th Cir. 1998);  Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir.

14   1991); United States v. Jalili, 925 F.2d 889, 893-894 (6th Cir. 1991); Brown v. United States,

15   610 F.2d 672, 677 (9th Cir. 1990).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal

16   custody must show that his sentence is being executed in an illegal, but not necessarily

17   unconstitutional, manner.  See e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995)

18   (contending time spent in state custody should be credited toward federal custody);  Jalili, 925 F.2d

19   at 893-894 (asserting petitioner should be housed at a community treatment center);  Barden v.

20   Keohane, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing Bureau of Prisons erred in determining whether

21   petitioner could receive credit for time spent in state custody);  Brown, 610 F.2d at 677 (challenging

22   content of inaccurate pre-sentence report used to deny parol).  A petitioner filing a petition for writ of

23   habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's

24   custodian.  Brown, 610 F.2d at 677.

25   In this case, Petitioner alleges that BOP's failure to conduct an immediate RRC placement

26   assessment and immediate re-designation for Petitioner violates the federal courts' interpretation of

27   the 2002 and 2005 regulations and the BOP's exercise of discretion under § 3621(b).  Petitioner is

28   therefore challenging the legality of the manner in which his sentence is being executed.  Thus, his

1    petition is proper under 28 U.S.C. § 2241.  In addition, because Petitioner is incarcerated at the

2    Federal Prison Camp, Atwater, California, which is within the Eastern District of California, Fresno

3    Division, this Court has jurisdiction to proceed to the merits of the petition.

4                                                    **EXHAUSTION**

5        A preliminary question is whether petitioner has exhausted available administrative remedies.

6    Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of

7    imprisonment must first exhaust all administrative remedies. Western Radio Services Co. v. Espy,

8    79 F.3d 896, 899 (9th Cir. 1996); Martinez v. Roberts, 804 F.3d 570, 571 (9th Cir. 1986); Chua Han

9    Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845

10   (9th Cir. 1983).

11       The exhaustion prerequisite for filing a § 2241 petition is judicially created; it is not a

12   statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other

13   grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995).  Thus, "[b]ecause exhaustion is not required by

14   statute, it is not jurisdictional."  Brown, 895 F.2d at 535.  If a petitioner has not properly exhausted

15   his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the

16   merits,  or require the petitioner to exhaust his administrative remedies before proceeding in court."

17   Id.; McCarthy v. Madigan, 503 U.S. 140, 144-145 (1992), superceded on other grounds, 42 U.S.C.

18   §1997(e).

19       One of the purposes of administrative exhaustion is to allow the agency an opportunity to

20   remedy its own mistakes before being haled into court, and this applies with particular force when

21   the challenged action involves an exercise of the agency's discretionary power.  See McCarthy v.

22   Madigan, 503 U.S. at 145.  Thus, exhaustion of administrative remedies would be futile and should

23   be excused if the agency lacks authority to grant the requested relief or has predetermined the issued

24   before it.  See id. at 148.

25       Here, Petitioner has not indicated that he has undertaken any efforts to exhaust his

26   administrative remedies, but does contend that exhaustion would be futile. (Doc. 1, p. 3).

27   Respondent has not addressed the issue.  As mentioned, however, futility is an exception to the

28   exhaustion requirement.  Laing v. Ashcroft, 370 F.3d 994, 1000-1001 (9th Cir. 2004).  In the instant

1   action, it is apparent that it would be futile for Petitioner to exhaust his administrative remedies

2   because he alleges he is being denied an immediate RRC placement based on formally-adopted BOP

3   regulations, including the Program Statement defining the RRC placement process, the validity of

4   which BOP strenuously maintains.  In the Court's view, therefore, Petitioner's exhaustion of his

5   administrative remedies is not a pre-requisite to the district court's jurisdiction over the case because

6   of the BOP's intractable and immutable policy against the relief sought.

7                                                       **DISCUSSION**

8          **A.  Motion to Amend**.

9          Petitioner has filed a motion to amend the petition.  (Doc. 7).  The Court construes this as a

10  motion to supplement the petition because it does not raise any new claims or issues, but merely

11  seeks to clarify Petitioner's original claim.  The Court has always understood Petitioner's claim as

12  involving both a challenge to the validity of the BOP's regulations, as well as a claim that he is

13  entitled to immediate placement in an RRC.  Therefore, no clarification is, in the Court's view,

14  necessary.  However, the Court perceives no prejudice in permitting the motion to amend filed on

15  April 26, 2007, to be filed and construed as a motion to supplement the arguments and contentions

16  contained in the original petition.  Accordingly, Petitioner's motion to amend will be construed as a

17  motion to supplement the petition, and, as construed, it will be granted.

18         **B.  Motion to Dismiss**.

19         Respondent contends that Petitioner's claim is premature and should therefore be dismissed

20  without prejudice.  The Court agrees.

21         Article III of the United States Constitution limits the federal courts to deciding "cases" and

22  "controversies."  To ensure that any matter presented to a federal court meets that requirement, the

23  Court considers the doctrines of standing, ripeness, and mootness.  Poe v. Ullman, 367 U.S. 497,

24  502-505 (1961).  The most important of these doctrines is standing.  Allen v. Wright, 468 U.S. 737,

25  750 (1984).  As a manifestation of the Article III case-or-controversy requirement, standing is a

26  determination of whether a specific person is the proper party to invoke the power of a federal court.

27  Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002).  "In

28  essence the question of standing is whether the litigant is entitled to have the court decide the merits

1   of the dispute or of particular issues." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).  To establish

2   standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly

3   unlawful conduct and likely to be redressed by the requested relief." <u>Id.</u> at 751.  The injury must be

4   "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or

5   imminent,'" not conjectural or hypothetical.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560

6   (1992)(citations omitted).

7       Closely related to standing is the issue of ripeness.  The ripeness doctrine serves "to prevent

8   the courts, through avoidance of premature adjudication, from entangling themselves in abstract

9   disagreements over administrative policies, and also to protect the agencies from judicial interference

10  until an administrative decision has been formalized and its effects felt in a concrete way by the

11  challenging parties. <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148-149 (1967), <u>overruled on</u>

12  <u>other grounds</u>, <u>Califano v. Sanders</u>, 430 U.S. 99 (1977).  The Supreme Court has stated that to meet

13  the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of

14  specific future harm.  <u>Laird v. Tatum</u>, 408 U.S. 1, 14 (1972).  "A claim is not ripe for adjudication if

15  it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at

16  all." <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998)(internal citations omitted).

17      The Court agrees with Respondent that Petitioner's claim is not ripe and that, therefore, he

18  presently lacks standing under Article III.  Even assuming, arguendo, that the petition properly

19  challenged the validity of the Program Statement, that regulation does not, as Petitioner has

20  suggested in his reply to the motion to dismiss, improperly limit the discretion of the BOP to make

21  an RRC placement in any individual case.  Rather, the regulation only requires that the BOP make an

22  RRC placement assessment *at least* eleven to thirteen months prior to the inmate's release date.

23  Nothing in the Program Statement prevents the BOP, in the exercise of its statutory discretion, from

24  making an earlier determination, although the Court is not aware of any statute or regulation that

25  requires such expedited action by the BOP.  In other words, the Program Statement simply insures

26  that inmates will receive an RRC assessment sufficiently in advance of their release date to permit

27  them to make appropriate plans prior to their transfer.  Because the Program Statement does not limit

28  or otherwise intrude upon the BOP's exercise of discretion either in making its RRC assessment or

in applying the appropriate criteria under 18 U.S.C. § 3621(b), the Program Statement, contrary to Petitioner's assertions, is not in any way analogous to the 2002 and 2005 regulations that many courts, including this one, have found to be an illegal limitation on the discretion vested in the BOP by § 3621(b).[1]

Because Petitioner's release date is July 6, 2011, the Program Statement does not require that the assessment team meet to consider Petitioner's RRC placement until between June and August 2010, approximately thirty-two months from now. Because Petitioner is not presently entitled to an RRC assessment under the applicable BOP regulation, he cannot show either a specific present objective harm or the threat of specific future harm. Laird, 408 U.S. at 14. Moreover, even Petitioner's release date is only tentative at this point; events could transpire between now and July 6, 2011 that would affect that date and result in the postponement of Petitioner's release date to a more distant point in time. For this reason, Petitioner's claim of a right to an immediate assessment rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. at 300. Thus, the claim is not ripe.

Moreover, the Court is unaware of any authority requiring the BOP to conduct its RRC eligibility reviews or immediately transfer a prisoner to an RRC facility *on demand of the prisoner*. Indeed, while case law from this Court and other jurisdictions strongly suggests that Petitioner is entitled to an RRC assessment made independently of the 2002 and 2005 regulations, Petitioner cites

---

[1]Moreover, even had Petitioner included a challenge to the Program Statement in his original petition, a habeas claim cannot be sustained based solely upon the BOP's purported violation of its own Program Statement. Under 28 U.S.C. § 2241, a petitioner's custody need not be in violation of the Constitution; a violation of federal law is sufficient. See 28 U.S.C. § 2241(c)(3). However, the violation of a BOP Program Statement is not a violation of federal law. Program Statements are "internal agency guidelines [that] may be altered by the Bureau at will" and that are not "subject to the rigors of the Administrative Procedure Act, including public notice and comment." Jacks v. Crabtree, 114 F.3d 983, 985 n. 1 (9th Cir.1997). BOP Program Statements are simply interpretive rules. Reno v. Koray, 515 U.S. 50, 61 (1995). "[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party." United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990); see also e.g., Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (Social Security Administration Manual was only regulation, had no legal force, and did not bind government); United States v. Busher, 817 F.2d 1409, 1411 (9th Cir.1987) (United States Attorneys' internal guidelines do not create any rights enforceable at law); Thompson v. United States, 592 F.2d 1104, 1110 (9th Cir.1979) (government safety manual or safety programs do not grant right to have them followed); United States v. Caceres, 440 U.S. 741 (1979) (failure to follow internal IRS regulations did not violate federal law).

1  no authority for the proposition that he has either a statutory or constitutional right to an *immediate*

2  assessment *or* transfer.

3  　　　Finally, for good reason,  the Court is reticent to micro-manage the BOP regarding inmate

4  RRC assessments and placements.  "[F]ederal courts ought to afford appropriate deference and

5  flexibility to state officials trying to manage a volatile environment....Such flexibility is especially

6  warranted in the fine-tuning of the ordinary incidents of prison life...."  Sandin v. Conner, 515 U.S.

7  472, 482 (1995).  In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), overruled in part on other

8  grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the basis for this

9  deference:

10  　　　Traditionally, federal courts have adopted a broad hands-off attitude toward problems of
     prison administration.  In part this policy is the product of various limitations on the scope of
11   federal review of conditions in state penal institutions.  More fundamentally, this attitude
     springs from complementary perceptions about the nature of the problems and the efficacy of
12   judicial intervention.  Prison administrators are responsible for maintaining internal order and
     discipline, for securing their institutions against unauthorized access or escape, and for
13   rehabilitating, to the extent that human nature and inadequate resources allow, the inmates
     placed in their custody. The Herculean obstacles to effective discharge of these duties are too
14   apparent to warrant explication.  Suffice it to say that the problems of prisons in America are
     complex and intractable, and, more to the point, they are not readily susceptible of resolution
15   by decree.  Most require expertise, comprehensive planning, and the commitment of
     resources, all of which are peculiarly within the province of the legislative and executive
16   branches of government.  For all of those reasons, courts are ill equipped to deal with the
     increasingly urgent problems of prison administration and reform.  Judicial recognition of
17   that fact reflects no more than a healthy sense of realism.

18  　　　In the instant motion to dismiss, Respondent indicates that the BOP is "well-aware of the

19  Court's ruling that RRC placement evaluations must be made without reference to 28 C.F.R.

20  §§ 570.20-21 and has been making its evaluations on that basis."  (Doc. 8, p. 4).  Respondent also

21  indicates that "[i]n all likelihood, petitioner will receive an evaluation of that type while he still has

22  at least 11 months to go before his good conduct release date."  (Id.).   Petitioner has given the Court

23  no reason to doubt the BOP's representations to the Court in that regard such that this Court should

24  expend its limited resources to oversee the BOP's conduct of future RRC assessments.

25  　　　In light of the foregoing, the Court will recommend that Respondent's motion to dismiss be

26  granted and that the petition for writ of habeas corpus be dismissed without prejudice.  Petitioner

27  may re-file this habeas action if Respondent's final decision regarding Petitioner's RRC placement

28  ///

1   fails to comply with current federal case law construing § 3621(b) and the applicable BOP

2   regulations.

3   **ORDER**

4       For the foregoing reasons, it is HEREBY ORDERED that Petitioner's Motion to Amend

5   (Doc. 7), is GRANTED.

6   **RECOMMENDATIONS**

7       Accordingly, the Court RECOMMENDS as follows:

8       1. Respondent's Motion to Dismiss (Doc. 8), be GRANTED;

9       2. The Petition for Writ of Habeas Corpus (Doc. 1), be DISMISSED as not ripe; and,

10      3.  The Clerk of Court be DIRECTED to enter judgment.

11      These Findings and Recommendations are submitted to the United States District Judge

12  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304

13  of the Local Rules of Practice for the United States District Court, Eastern District of California.

14  Within twenty (20) days after being served with a copy, any party may file written objections with

15  the Court and serve a copy on all parties.  Such a document should be captioned "Objections to

16  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

17  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

18  The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

19  (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive

20  the right to appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22  IT IS SO ORDERED.

23  Dated:   **October 4, 2007**               **/s/ Theresa A. Goldner**

24                                       UNITED STATES MAGISTRATE JUDGE

25

26

27

28

U.S. District Court
E. D. California